# EXHIBIT A

Chancery Division Civil Cover Sheet
General Chancery Section

(5/26/16) CCCH 0623

FILED
11/1/2019 6:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH12804

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BENJAMIN D. FONGERS

_____
                                    Plaintiff

v.

No. ___2019CH12804___

CAREERBUILDER, LLC, and APOLLO GLOBAL MANAGEMENT, INC.

_____
                                    Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005 ☐ Administrative Review
0001 ☑ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

0007 ☐ General Chancery
0010 ☐ Accounting
0011 ☐ Arbitration
0012 ☐ Certiorari
0013 ☐ Dissolution of Corporation
0014 ☐ Dissolution of Partnership
0015 ☐ Equitable Lien
0016 ☐ Interpleader
0017 ☐ Mandamus
0018 ☐ Ne Exeat

0019 ☐ Partition
0020 ☐ Quiet Title
0021 ☐ Quo Warranto
0022 ☐ Redemption Rights
0023 ☐ Reformation of a Contract
0024 ☐ Rescission of a Contract
0025 ☐ Specific Performance
0026 ☐ Trust Construction
     ☐ Other (specify) _____

By: McGuire Law, P.C.
_____
☑ Atty. No.: 56618 _____  ☐ Pro se 99500
Name: McGuire Law, P.C.
Atty. for: Plaintiff
Address: 55 W. Wacker Dr., 9th Fl.
City/State/Zip: Chicago, IL 60601
Telephone: (312) 893-7002
Primary Email: pgeske@mcgpc.com
Secondary Email: mmcguire@mcgpc.com
Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice from the **Clerk's Office** for this case at this Email address:

_____

Hearing Date: 3/3/2020 10:00 AM - 10:00 AM
Courtroom Number: 2510
Location: District 1 Court
         Cook County, IL

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

**12-Person Jury**

FILED
11/1/2019 6:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH12804

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BENJAMIN D. FONGERS, individually and on behalf of similarly situated individuals, <br><br> *Plaintiff,* <br><br> v. <br><br> CAREERBUILDER, LLC, a Delaware limited liability company, APOLLO GLOBAL MANAGEMENT, INC., a Delaware corporation, <br><br> *Defendants.* | No. **2019CH12804** <br><br> Hon. <br><br> **JURY TRIAL DEMANDED** <br><br> Hearing Date: 3/3/2020 10:00 AM - 10:00 AM <br> Courtroom Number: 2510 <br> Location: District 1 Court <br> Cook County, IL |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Benjamin D. Fongers, by and through his undersigned attorneys, brings this Class Action Complaint against Defendants, CareerBuilder, LLC ("CareerBuilder") and Apollo Global Management, Inc. (collectively, "Defendants") to seek redress for Defendants' unlawful failure to pay commissions owed to Plaintiff and other similarly situated employees. Plaintiff alleges as follows based on personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including an investigation by his attorneys.

### NATURE OF THE ACTION

1.      This case is a putative class action brought to recover unpaid wages and commissions that Defendants have wrongfully failed to pay to their employees since implementing an unlawful compensation plan in 2019.

2.      Defendant CareerBuilder is a global technology company that operates the job search website www.careerbuilder.com. CareerBuilder also offers a number of products and services for employers, including employment screening software, labor market intelligence, talent

management software, and other recruiting and online career search services.

3.      To promote its products and services, CareerBuilder employs hundreds of sales representatives. CareerBuilder sales representatives are compensated through wages, commissions, and bonuses, which are generally paid out in monthly installments as a percentage of monthly revenue received from each representative's sale of CareerBuilder's products and services.

4.      For example, beginning at least as early as January 2018, and continuing through February 2019, Plaintiff and other CareerBuilder sales representatives were paid monthly commissions of 4% of monthly net revenue recognized on the sale of most CareerBuilder products and services.

5.      However, in March 2019, CareerBuilder announced that it was implementing a new compensation plan, under which Plaintiff and other sales representatives would be paid as little as 0% – .25% of net revenue recognized on the sale of the same products and services.

6.      Importantly, CareerBuilder's new compensation plan applied *retroactively*, meaning that sales representatives who were promised a commission of 4% on revenue from sales made under the prior compensation plan were now going to be stripped of those commissions and only paid a lesser amount (if anything) instead.

7.      Then, in July 2019, CareerBuilder announced that it was changing its compensation plan yet again, and reducing *all* commissions for sales made prior to implementation of the new plan to **0%** for Plaintiff and other sales representatives in his sales group. In other words, these employees would be completely unable to recover past commissions that they were still owed.

8.      CareerBuilder's actions are not only unlawful under Illinois law, they are also unethical, unscrupulous, and have caused concrete harm to its many employees. CareerBuilder's

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

management strongly encourages its sales representatives to sell long-term, multi-year contracts in order to ensure a steady stream of income from commissions received under those contracts. But now, sales representatives who followed those instructions and closed deals under the prior compensation plan will receive no commissions from those sales. In effect, CareerBuilder's 2019 compensation plan punishes many of its top performing salespeople, like Plaintiff, who successfully closed deals involving long-term contracts under the prior commission plan.

9.      In addition to breaching their compensation contracts with Plaintiff and the other putative class members, Defendants have also violated the Illinois Sales Representative Act, 820 ILCS 120/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*

10.     Accordingly, in order to redress these harms, Plaintiff brings this action on his own behalf and on behalf of a class defined below. On behalf of himself and the putative class members, Plaintiff seeks an award of monetary damages, including pre-judgment interest from the date this action was filed, restitution of any commissions and wages that have been unjustly withheld, and an award of reasonable attorneys' fees and costs.

## PARTIES

11.     Defendant CareerBuilder is a Delaware limited liability company with its principal place of business in Chicago, Illinois. CareerBuilder is registered to do business in Illinois and it conducts business in Cook County, Illinois and elsewhere nationwide.

12.     Defendant Apollo Global Management, Inc. ("Apollo") is a publicly traded, for-profit corporation incorporated in Delaware and headquartered in New York City. Defendant CareerBuilder is a majority-owned subsidiary of Defendant Apollo. Defendant Apollo manages and exercises complete control over Defendant CareerBuilder, which acts as an agent on behalf of, and within the course and scope of the agency with, Defendant Apollo.

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

13.     Plaintiff Benjamin Fongers is a natural person and a resident of Illinois. At all relevant times, Plaintiff has been employed by Defendant CareerBuilder as an inside sales representative.

## JURISDICTION AND VENUE

14.     This Court has specific personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a), because Plaintiff's and the putative class members' claims arise out of Defendants' unlawful in-state actions, namely, Defendants' development and implementation of unlawful compensation plans under which they fail to pay commissions and wages owed to their Illinois employees. Further, Defendants are doing business within this state such that they have sufficient minimum contacts with Illinois and have purposefully availed themselves of Illinois markets to make it reasonable under the Illinois Constitution and Constitution of the United States for this Court to exercise personal jurisdiction over Defendants.

15.     The Court also has general personal jurisdiction over Defendant CareerBuilder with respect to Plaintiff's and the putative class members' claims pursuant to 735 ILCS 5/2-209(b), because CareerBuilder is a corporation organized under the laws of this State and headquartered within this State.

16.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendants maintain offices in Cook County and are doing business in Cook County, and thus Defendants reside in Cook County for purposes of 735 ILCS 5/2-102; and because the transaction out of which Plaintiff's causes of action arose occurred in Cook County, as Plaintiff was employed by Defendant CareerBuilder in Cook County and worked out of Defendants' office in Chicago, Cook County, Illinois.

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

### *Background*

17.     Defendant CareerBuilder is a global technology company that operates the job search website www.careerbuilder.com. In addition to advertising available to jobs to prospective employees, CareerBuilder also offers a number of products and services for employers. These include software and services to help companies find, hire and manage employees, such as employment screening software, labor market intelligence, talent management software, and other recruiting and online career search services.

18.     To promote CareerBuilder products and services to current and prospective employer-customers, Defendants employ hundreds if not thousands of sales representatives.

19.     Defendants' sales representatives are compensated in accordance with the terms of their compensation plans. Defendants' compensation plans are form agreements that are drafted by Defendants based on a standard template that Defendants use with all of their sales representatives. In other words, Defendants' compensation plans contain largely identical material terms irrespective of the sales representative counterpart.

20.     For example, in or about January 2018, Defendants' implemented the compensation plan attached hereto as Exhibit A.

21.     Under the essential and material terms of this compensation plan, sales representatives were to be paid monthly commissions of 4% of monthly net revenue recognized on the sale of certain products and services, including talent acquisition products, software products, sourcing services, and talent driver services. (See Figure 1, below).

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

| PRODUCT LINE | | RATE |
|---|---|---|
| **Talent Acquisition** | All Talent Acquisition | 4% |
| **Services** | Sourcing | 4% |
| | Talent Driver | 4% |
| | CBES | 2% |
| | All Other Services | 2% |
| **Software** | All Software | 4% |

**(Figure 1)**

22.     Under Defendants' compensation plans, sales representatives are generally paid commissions monthly as revenue is recognized. By way of example, if an employee sells a 12-month contract for services that costs $120,000, Defendants will recognize $10,000 in revenue per month and the sales representative who originated the account will receive a commission of 4% of the $10,000, or $400 per month.

23.     Because commissions are paid out over time, Defendants encourage their sales representatives to sell long-term, multi-year contracts in order to ensure a steady stream of income from commissions received under those contracts.

***Defendants' Refusal to Honor Commissions Owed For Prior Sales***

24.     In or about March 2019 Defendants announced a new compensation plan, under which sales representatives could be paid as little as 0% – .25% instead of 4% of net revenue recognized on the sale of products and services.

25.     Importantly, not only did this new compensation plan apply prospectively to new sales, it also applied retrospectively to sales made under the prior, 4% compensation plan.

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

| YTD Signed New ACV Performance | Signed New ACV Pay Tiers |
|---|---|
| +170% YTD Attainment | 6.00% |
| 155% - 169.9% YTD Attainment | 5.00% |
| 141% - 154.9% YTD Attainment | 4.00% |
| 126% - 140.9% YTD Attainment | 3.00% |
| 110% - 125.9% YTD Attainment | 2.50% |
| 100% - 109.9% YTD Attainment | 2.00% |
| 90% - 99.9% YTD Attainment | 1.50% |
| 80% - 89.9% YTD Attainment | 1.00% |
| 70% - 79.9% YTD Attainment | 0.25% |
| <70% YTD Attainment | 0.00% |

**(Figure 2)**

26.     As stated in the new compensation plan, Defendants would no longer pay its sales representatives a 4% commission from revenue recognized from sales made under the prior compensation plan, and instead would only pay a 2% commission if the representative met their YTD (year to date) attainment goal, and a lower percentage—as little as 0%—if the representative's sales were below that goal.

27.     In July 2019, CareerBuilder announced that it was changing its compensation plan yet again for Plaintiff and other sales representatives in his sales group, and reducing *all* of their commissions for sales made prior to implementation of the new plan to **0%**. As such, sales representatives would not even receive .25% commissions for prior sales.

***Defendants' Unlawful Account-Shifting Practices***

28.     Under the March 2019 compensation plan, Defendants implemented another significant change in Plaintiff's and the other Class members' compensation plan: Defendants began requiring that a sales representative be the "original signor" of an account to be entitled to compensation based on revenue received from that account.

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

3. **Original Revenue Bonus** is calculated at **2%** of the GAAP Revenue recognized, based on the following:
   a) This revenue derives from deals you signed on a different plan and/or in prior years, that is still recognizing revenue, while on this Plan.
   b) You are the Original Signer of the contract.
   c) The account was assigned to you on the last calendar day of the month.

**(Figure 3)**

29.     Under this original signor clause, sales representatives are only eligible to receive commissions on accounts that are both (i) under their name, *and* (ii) an account that they originated.

30.     If a sales representative originates an account, and that account is later reassigned to another sales representative, neither employee will receive any commissions from revenue received from that account

31.     To give a simple example, Sales Reps A and B both have accounts under their names that they respectively originated. Defendants are able to reassign B's accounts to A and A's accounts to B. Afterward, neither sales representative will receive commissions on the reassigned accounts.

32.     Thus, by shifting accounts around, Defendants can avoid paying commissions to any of their employees, and instead retain all revenue for themselves.

33.     Not only does account-shifting harm Defendants' employees, it also fails to provide any benefits to Defendants' employer-customers. Rather, shifting accounts unnecessarily disrupts customer relationships and results in placement of accounts with a representative who may be unfamiliar with the employer's needs. As such, Defendants' account-shifting practice was an intentional scheme to deprive its employees of commissions.

34.     In or about early 2019—prior to implementation of its March 2019 compensation plan—Defendants began quietly shifting accounts among their sales representatives without any notice or explanation. When Plaintiff and Defendants' other sales representatives learned about

the new compensation plan and its original signor requirement, they realized that they would no longer receive *any* revenue on many of their current and former accounts.

**_Facts Specific to Plaintiff_**

35.     In 2014, Plaintiff was hired by Defendant CareerBuilder as an Account Executive to sell Defendant's suite of products and services.

36.     At least as early as January 2018, Defendants offered and promised Plaintiff a base salary plus commission of four (4%) percent of revenue recognized from sales of certain CareerBuilder products and services.

37.     In or about March 2019, Defendants unilaterally changed their commission plan and compensation agreement with Plaintiff, including changing his commission percentage from 4% to 2% (assuming 100% YTD attainment) of all monthly revenue recognized on accounts in his name.

38.     Notably, Plaintiff was denied the promised four (4%) percent he was owed for sales made prior to March 2019.

39.     Plaintiff complained to Defendants' human resources department that Defendants were violating their agreement in failing to pay him for commissions earned.

40.     While improperly withholding Plaintiff's commissions, Defendants continued to demand that Plaintiff solicit additional customers even though Plaintiff was not receiving rightfully earned compensation.

41.     Making matters worse, in or about July 2019, Defendants' human resources department issued another new compensation plan that applied to Plaintiff and others within his sales group, which provided that Plaintiff would now receive no commissions, 0%, of revenue from sales closed under the prior compensation plan.

FILED DATE: 11/1/2019 6:01 PM    2019CH12804

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

42.     Plaintiff is not alone in his experiences, and many of Defendants' other sales representative employees throughout the country have had nearly identical experiences.

## CLASS ALLEGATIONS

43.     Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action on behalf of a nationwide class defined as follows:

> **The Class:** All current and former employees of Defendant CareerBuilder who, during the applicable limitations period, (1) were employed as a sales representative; (2) were compensated under Defendants' compensation plan in the form of monthly commissions calculated as a percentage of monthly net revenue generated from accounts they originated, and (3) closed a sale of a contract, product, or service before March 1, 2019 that generated monthly revenue on or after March 1, 2019.

44.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officer or director.

45.     Upon information and belief, there are hundreds if not thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiff, the members can easily be ascertained through Defendants' personnel records.

46.     Plaintiff's claims are typical of the claims of the Class members he seeks to represent because the factual and legal bases of Defendants' liability to Plaintiff and the other Class members are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and the other Class members. As alleged herein, Plaintiff and the other Class members have all suffered damages in the form of unpaid commissions as a result of Defendants' implementation of an unlawful compensation plan.

47.     There are many questions of law and fact common Plaintiff and the other Class members' claims, and those questions predominate over any questions that may affect individual

- 10 -

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

Class members. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendants' compensation plan forms a valid and enforceable agreement with its sales representative employees;

b. If no contract at law exists, whether Defendants' compensation plant constitutes an implied contract in equity;

c. Whether Defendant breached its contracts with Plaintiff and the Class members;

d. Whether Defendant was unjustly enriched by its conduct;

e. Whether Plaintiffs and the Class members sustained damages as a result of Defendants' 2019 compensation plan;

f. Whether Defendants' conduct violated the Illinois Sales Representative Act, 820 ILCS 120/1, *et* seq.; and

g. Whether Defendants' conduct violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*

48. The class treatment of these common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

49. Absent a class action, most Class members would find the cost of litigating their claims to be prohibitively expensive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

50. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent.

51. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this

FILED DATE: 11/1/2019 6:01 PM 2019CH12804

action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

52.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

<u>COUNT I</u>
**Common Law Breach of Contract**
**(on behalf of Plaintiff and the other Class members, in the alternative to Counts II and III)**

53.     Plaintiff realleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

54.     On or about January 1, 2018, Defendants promulgated a compensation plan governing how and in what amounts commissions would be paid to its sales representative employees. (Exh. A).

55.     When Plaintiff and the other Class members accepted the terms of Defendants' compensation plan and agreed to work for and did work for Defendants subject to the terms of the compensation plan, they entered into valid and enforceable written contracts with Defendants.

56.     The contracts between Plaintiff and the other Class members and Defendants are supported by bargained-for consideration and were entered into following offer and acceptance of the definite and certain terms set forth in the compensation plan.

57.     Under the terms of Defendants' agreements with Plaintiff and the other Class members, Defendants promised to pay Plaintiff and the other Class members commissions in the amount of 4% of monthly net revenue recognized on the sale of talent acquisition products, software products, sourcing services, and talent driver services. (*Id.*).

58.     Plaintiff and the other Class members complied with all of the terms of their

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

agreements with Defendants and fulfilled all the terms and conditions required under the terms of their respective contracts.

59.     In or about March 2019, Defendants announced a new compensation plan under which it refused to honor the agreement embodied in the terms of the prior compensation plan. Specifically, Defendants would no longer pay commissions of 4% on revenue received from sales made under the prior commission plan.

60.     Plaintiff has demanded that Defendants perform Defendants' promises under the contract, but Defendants have refused and continues to refuse to perform under the contract.

61.     As a direct and proximate result of Defendants' breaches of its agreements with Plaintiff and the other members of the Class, Plaintiff and the other members of the Class have suffered actual, concrete harm, pecuniary losses, and monetary damages in an amount to be determined at trial.

62.     WHEREFORE Plaintiff prays for the relief requested below.

## COUNT II
### Common Law Breach of Implied Contract
**(on behalf of Plaintiff and the other members of the Class, in the alternative to Count I)**

63.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 52 as if fully set forth herein.

64.     Through their conduct and actions, Plaintiff and the other Class members entered into implied contracts in law and in fact with Defendant. Specifically, when Defendants announced their compensation plan, and Plaintiff and the other Class members accepted the terms of Defendants' compensation plan and agreed to work for and did work for Defendants subject to the terms of the compensation plan, Plaintiff and the other members of the Class entered into implied contracts with Defendants.

FILED DATE: 11/1/2019 6:01 PM  2019CH12804

65.     Under these implied contracts, Plaintiff and the other Class members reached a meeting of the minds and mutual understanding with Defendants that Defendants would promise to pay Plaintiff and the other Class members commissions in the amount of 4% of monthly net revenue recognized on the sale of talent acquisition products, software products, sourcing services, and talent driver services they originated.

66.     Defendant breached its implied agreement with Plaintiff and the other members of the Class by, among other things, failing to honor its promise to pay Plaintiff and the other Class members commissions in the amount of 4% of monthly net revenue recognized on the sale of talent acquisition products, software products, sourcing services, and talent driver services they originated.

67.     As a direct and proximate result of Defendant's breach of its implied agreements with Plaintiff and the Class members, Plaintiff and the other Class members have suffered actual monetary damages, pecuniary losses, and other harms as described herein, all of which have ascertainable value to be proven at trial.

68.     WHEREFORE, Plaintiff prays for the relief requested below.

### COUNT III
**Common Law Unjust Enrichment**
**(on behalf of Plaintiff and the other members of the Class, in the alternative to Count I)**

69.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 52 as if fully set forth herein.

70.     At all times relevant to this litigation, Defendants owed a legal duty to Plaintiff and the other Class members to not unfairly or unduly take advantage of them or commit wrongful acts in order to unjustly enrich itself at Plaintiff's or the Class members' expense.

71.     As explained above, since March 2019, Defendants have wrongfully refused to pay

FILED DATE: 11/1/2019 6:01 PM 2019CH12804

monies it owes to Plaintiff and the other Class members through commissions they earned from the sale of Defendants' products and services.

72.     Defendants have thus retained a benefit to the detriment of Plaintiff and the other Class members. This benefit is measurable in the amount of any unpaid commissions owed on the monthly net revenue Defendants have recognized post-March 2019 from the sales of talent acquisition products, software products, sourcing services, and talent driver services that occurred under the prior compensation plan. Defendants appreciate or has knowledge of such benefit.

73.     Defendants' retention of this benefit violates fundamental principles of justice, equity, and good conscience.

74.     Defendants have been enriched, and it would be unjust to allow Defendant to retain the enrichment

75.     Defendants' actions and omissions leading to its unjust enrichment were the actual and proximate cause of harm to Plaintiff and the other Class members.

76.     Plaintiff and the other Class members are therefore entitled to an award of damages in the amount by which Defendants have been unjustly enriched and an order requiring Defendants to disgorge any revenue, unpaid commissions, or other benefit it has retained.

77.     WHEREFORE, Plaintiff prays for the relief set forth below.

## COUNT IV
**Violation of the Illinois Sales Representative Act, 820 ILCS 120/1, *et seq.***
**(on behalf of Plaintiffs and the members of the Class)**

78.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 52 as if fully set forth herein.

79.     At all relevant times alleged herein, Plaintiff and the other Class members were sales representatives within the meaning of the Illinois Sales Representative Act ("ISRA"), 820

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

ILCS 120/1(4), who contracted with Defendants to solicit the sale of Defendants' products and were compensated by Defendants by commission.

80. At all relevant times alleged herein, Defendants were a principal within the meaning of the ISRA, 820 ILCS 120/1(3), who distributed a product for sale, namely talent acquisition software, employment screening software, and other software packages.

81. Defendants contracted with Plaintiff and the other Class members as sales representatives to solicit orders for its products, and compensated Plaintiff and the other Class members for such sales by commission.

82. Although Defendants have received revenue for the sales procured by Plaintiff and the other Class members, Defendant has not paid Plaintiff and the other Class members compensation due and owing.

83. To date, notwithstanding demand for payment of the commissions, Defendants have failed and refused to pay the commissions owed to Plaintiff and the other Class members.

84. Pursuant to Section 3 of the ISRA, in addition to the commissions due, Defendants are liable to Plaintiff and the other Class members for exemplary damages in an amount that does not exceed three times the amount of the commissions due, plus Plaintiff's reasonable attorney's fees and court costs. 820 ILCS 120/3.

85. As a direct and proximate result of Defendants' conduct and violations of the ISRA, Plaintiff and the other Class members have suffered actual harm in the form of actual monetary damages, pecuniary losses, and other harms in an amount to be proven at trial.

86. WHEREFORE, Plaintiff prays for relief requested forth below.

FILED DATE: 11/1/2019 6:01 PM    2019CH12804

## COUNT V
### Violation of Illinois Wage and Payment Collection Act, 820 ILCS 115/1, *et seq.*
### (on behalf of Plaintiffs and the members of the Class, in the alternative to Count IV)

87.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 - 52 as if fully set forth herein.

88.     Plaintiff and the other Class members are "employees" as defined in the Illinois Wage Payment and Collection Act ("IWPCA"), and Defendants are both "employers" as defined in the IWPCA. 820 ILCS 115/2.

89.     Under the IWPCA, an employer is required to pay commissions to employees at least monthly. *Id.* § 3.

90.     As explained above, Defendants have failed to timely pay Plaintiff commissions earned by him.

91.     Defendants have no legal basis for their refusal to pay Plaintiff and the other Class members the compensation they have earned and which is due and owing to them. Defendant's refusal to pay Plaintiff the amounts due and owing to him for commissions is vexatious, harassing, and in bad faith.

92.     As a direct and proximate result of Defendants' conduct and violations of the ISRA, Plaintiff and the other Class members have suffered actual harm in the form of actual monetary damages, pecuniary losses, and other harms in an amount to be proven at trial.

93.     Pursuant to Section 14(a) of the IWPCA, any employee not timely paid wages, final compensation, or wage supplements by his or her employer shall be entitled to an award of damages equal to the amount of any such underpayments along with damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, plus an award of costs and all reasonable attorney's fees. 820 ILCS

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

115/14(a).

94.     WHEREFORE, Plaintiff prays for the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the other Class members, prays for the following relief:

A.      An order certifying the Class proposed above and appointing Plaintiff as Class representative and the undersigned counsel as Class counsel;

B.      An award of actual or compensatory damages under Count I in amount to be determined at trial;

C.      An award of damages, disgorgement, or restitution of all unpaid commissions under Counts II and III in an amount to be determined at trial;

D.      An award of actual damages and exemplary damages in an amount not to exceed three times the amount of commissions due under count IV;

E.      An award of damages under Count V equal to the amount of any unpaid commissions along with damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid;

F.      An award of reasonable attorneys' fees, expenses, and costs under Counts IV and V;

G.      Such preliminary and other injunctive, equitable, or declaratory relief as the Court deems appropriate; and

H.      Such other and further relief as the Court deems reasonable and just.

FILED DATE: 11/1/2019 6:01 PM    2019CH12804

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 1, 2019

Respectfully submitted:

BENJAMIN D. FONGERS, individually
and on behalf of a class of similarly situated
individuals

By: /s/ Paul T. Geske
One of Plaintiff's Attorneys

Myles McGuire
Paul Geske
McGUIRE LAW, P.C. (Firm ID#56618)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com

*Attorneys for Plaintiff and the putative class*

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

# Exhibit A



FILED DATE: 11/1/2019 6:01 PM   2019CH12804

## Revenue Rep
## (KAE/NAE/MAE/SAE/AE)
## Effective 8/1/2018 - 12/31/2018

### ANNUAL AND QUARTERLY GOALS:

Your Annual Compensation Revenue Goal and Quarterly Active Annual Contract Value (ACV) Goal will be assigned to you by CareerBuilder Executive Leadership.

The ACV Goal will be calculated based on Talent Acquisition and Software Products in your account set on the last calendar day of every month.

The Chief Financial Officer and Chief Sales Officer reserve the right, in their sole discretion, to adjust Goals, individually and/or unit-wide, at any time.

### ANNUAL CONTRACT VALUE (ACV) MONTHLY BONUS:

You may be eligible for a monthly ACV Bonus, based on your actual Monthly Active ACV vs Monthly Active ACV Goal performance.

The ACV Bonus payout is capped at 110% of your Monthly Bonus Target in months 1 and 2 of every quarter, and uncapped in the last month of every quarter.

Performing at 50% or less of your Monthly ACV Goal will result in a 50% Bonus from your Monthly Bonus Target.

The Monthly Bonus Target is calculated as a percentage of the Compensation Revenue recognition on products in your account set on the last calendar day of the month. The applicable percentages are as follows:

| PRODUCT LINE | | RATE |
|---|---|---|
| **Talent Acquisition** | All Talent Acquisition | 4% |
| **Services** | Sourcing | 4% |
| | Talent Driver | 4% |
| | CBES | 2% |
| | All Other Services | 2% |
| **Software** | All Software | 4% |

**ACV Bonus Calculation is as follows:**

1.) Monthly Active ACV / Monthly ACV Goal = **ACV Attainment %**
2.) ACV Attainment % x Monthly Bonus Target = **Monthly Bonus**

**Active ACV Example:**

- 24 month deal with a **Contract Start Date** in October for $240,000 Net Contract Value (NCV)
- ($240,000/24) = $10,000 x 12 months = $120,000 ACV to be applied to October's Bonus Calculation

**ACV Bonus Example:**

- October Monthly Bonus Target = $7,500
- October Monthly ACV Attainment % = 105%
- October Payout % = 105%
- October ACV Bonus = 105% x $7,500 = **$7,875**



FILED DATE: 11/1/2019 6:01 PM 2019CH12804

## QUARTER-END ACV KICKER BONUS: 3%

You may be eligible to earn a Quarter-End Kicker Bonus if your actual Monthly Active ACV exceeds your Monthly Active ACV Goal in the last month of each quarter.

**The calculation is as follows:**

Quarter-End ACV Kicker = [Monthly Active ACV – Monthly Active ACV Goal] x 3%

**September Example:**

- September's Active ACV = $1,500,000
- September's Active ACV Goal = $1,000,000
- ($1,500,000 - $1,000,000) x 3% = **$15,000 Quarter-End ACV Kicker Bonus**

## YEAR-END KICKER BONUS ON TALENT DISCOVERY PACKAGES: 7%

You may be eligible to earn a Year-End Kicker Bonus if your actual Total Annual Compensation Revenue recognized exceeds your Total Annual Compensation Revenue Goal. This bonus is based on all 2018 Talent Discovery Package (TDP) Revenue that you recognized throughout 2018 in this role.

This bonus will be paid at the time of the last paycheck in January 2019.

**The calculation is as follows:**

YE TDP Kicker Bonus = (Total Annual TDP Compensation Revenue Recognized x 7%)

**Example:**

- Your actual Total Annual Compensation Revenue recognized exceeds your Total Annual Compensation Revenue Goal
- Total 2018 TDP Revenue Recognized = $250,000
- $250,000 x 7% = **$17,500 Year-End Talent Discovery Kicker Bonus**

## BONUS PLAN TERMS AND CONDITIONS

**ELIGIBILITY**

Plan participation is limited to employees specifically designated in writing as participants by the Human Resources Department. In order to be eligible for any Bonus, an employee must be employed in a designated position and must remain in that position through the date the Bonus is paid. A Bonus for a particular sale is not earned until both: (i) the Company has been paid in full and is under no obligation to issue any refunds; and (ii) the time of the bonus payout. The Company reserves the right to recover advanced Bonuses, which are not earned, and to adjust Bonuses which it considers questionable or uncollectible. Bonuses are paid with the last paycheck of the calendar month following the close of a month, quarter, semiannually or annually, as designated in the Bonus Plan (i.e. last paycheck of March for February month Bonus or last paycheck of April for Q1 Bonus).

**HOW THE BONUS IS CALCULATED**

The employee's Target Bonus (if applicable) and formula may be specified in his/her offer letter, most recent salary change document, or Bonus Plan as received by Human Resources. Bonuses will only be paid on rate card deals, up to the standard discounts. CareerBuilder reserves the right, in its sole discretion, to adjust rates, products, and product lines to determine Bonus amounts individually and/or unit-wide, at any time. The Company reserves the right, in its sole discretion, to cap a Bonus, pay a reduced Bonus, or pay no Bonus at all, due to business needs (e.g., sales below standard discounts, sales subject to non-standard terms or conditions, profitability analysis, employee's role in sales process).

**TERRITORIES AND ASSIGNMENTS**

Accounts are owned by the Company, not by the individual. The Company reserves the complete discretion to reassign accounts and territories.



FILED DATE: 11/1/2019 6:01 PM   2019CH12804

Please refer to the relevant territory policy for details on account reassignments and the effect on targets.

**RESPONSIBILITY AND ADMINISTRATION**
The Company's Chief Financial Officer and Chief Human Resources Officer (the "Administrators") are solely responsible for the interpretation of this Plan and have the complete discretion to resolve any issues or disputes. Any disputes must be submitted in writing to your HR Business Partner within 20 calendar days of the dispute arising. An Administrator's decision shall be final and binding.

**TERMINATIONS**
In order to qualify for any Bonus under this Plan, an individual must have been employed in an eligible position and must remain in that position, through the date the Bonus is paid. Employees who resign, or on salary continuation, or are terminated before a Bonus is paid are not eligible for any portion of the Bonus.

**EMPLOYEE ACKNOWLEDGMENT**
This Bonus Plan supersedes and replaces any prior bonus, commission and/ or incentive plans for eligible employees. This Plan is not and should not be thought of as a contract between CareerBuilder and a participant, and does not guarantee any level of compensation or a bonus. This Plan also shall not be construed to imply the existence or creation of a contract of employment between the Company and a participant or, a guarantee of employment for any specified period. Both the participant and the Company remain free to terminate the at-will employment relationship at any time, for any reason, with or without notice. Bonuses are only one element of performance and the payment of a Bonus may not be representative of that individual's overall standing in the Company. CareerBuilder, in its sole discretion, may amend or terminate this Plan at any time for any reason without notice. This Plan governs in the event of any discrepancy between the Plan and any other verbal or written communications to a Participant.

You acknowledge that you have received, read, and understood the Bonus Plan, and agree to its Terms and Conditions. You understand that this Bonus Plan explains how your Bonuses are calculated, is not a contract, and does not alter your employment at-will status.

Your acknowledgement of the foregoing will be by electronic means.

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                    (06/28/18) CCG 0001

FILED
11/1/2019 6:01 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH12804
7210422

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

BENJAMIN D. FONGERS

(Name all parties)          Case No.    **2019CH12804**

v.

CAREERBUILDER, LLC, and APOLLO GLOBAL
MANAGEMENT, INC.

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: _____11/1/2019 6:01 PM DOROTHY BROWN_____

Atty. No.: __56618__

Atty Name: __McGuire Law, P.C.__        DOROTHY BROWN, Clerk of Court

Atty. for: __Plaintiff__

Address: __55 W. Wacker Dr., 9th Fl.__     Date of Service: _____

City: __Chicago__          State: __IL__     (To be inserted by officer on copy left with Defendant or other person):

Zip: __60601__

Telephone: __(312) 893-7002__

Primary Email: __pgeske@mcgpc.com__        Hearing Date: 3/3/2020 10:00 AM - 10:00 AM
                                           Courtroom Number: 2510
Secondary Email: __mmcguire@mcgpc.com__    Location: District 1 Court
                                                    Cook County, IL
Tertiary Email: _____

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**   cookcountyclerkofcourt.org

FILED DATE: 11/1/2019 6:01 PM  2019CH12804

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 11/1/2019 6:01 PM   2019CH12804

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**