IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| BENJAMIN D. FONGERS, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CAREERBUILDER, LLC, et al.,<br><br>Defendants. | Case No. 19-cv-7966<br><br>Judge Charles R. Norgle |

## ORDER

Plaintiff's motion to remand [13] is granted.

## STATEMENT

Plaintiff Benjamin Fongers brings a putative class action against CareerBuilder, LLC, and Apollo Global Management (collectively "Defendants") alleging breach of contract, breach of implied contract, unjust enrichment, violation of the Illinois Sales Representative Act, 820 ILCS 120/1, *et seq.*, and violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*

The case was originally filed in the Circuit Court of Cook County. Defendants removed to this Court pursuant to 28 U.S.C. § 1446 on the theory that the jurisdictional requirements of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1453(b), had been met. Plaintiff then moved to remand to state court, arguing (1) that the $5 million amount in controversy requirement had not been established, and (2) that the Court should exercise its discretion to allow the state court to adjudicate the controversy. 28 U.S.C. § 1332(d)(3).

Because the Court agrees with Plaintiff that Defendant has not met its burden as to the amount in controversy, the Court grants the motion to remand on the first ground and need not address the second.

### Background

The facts relevant to the pending motion are as follows. Plaintiff alleges that Defendants retroactively changed the amount of commissions that sales representatives were entitled to receive on already completed sales in March 2019. Specifically, Plaintiff alleges that from as early as January 2018 through February 2019, sales representatives were entitled to a 4 percent commission of monthly net revenue recognized on the sale of most of Defendants' products and

1

services. Plaintiff alleges that in March 2019, Defendant announced that the commissions were being retroactively reduced to zero to .25 percent of revenues, including on continuing sales contracts that had already been entered into during the higher commission period. In July 2019, Plaintiff alleges, all commissions for sales made prior to the implementation of the new plan were set at zero percent.

Plaintiff alleges that this retroactive adjustment of commissions on continuing and already sold contracts is the basis for their various claims. At no point does Plaintiff allege the amount of sales or commissions an average sales representative would receive. Plaintiff alleges that the class could be made up of "hundreds if not thousands" of sales representatives across the country. Compl. ¶ 45.

The only reference to an amount with respect to potential damages is contained in Paragraph 22, which states in full as follows:

> Under Defendants' compensation plans, sales representatives are generally paid commissions monthly as revenue is recognized. By way of example, if an employee sells a 12-month contract for services that cost $120,000, Defendants will recognize $10,000 in revenue per month and the sales representative who originated the account will receive a commission of 4% of the $10,000, or $400 per month.

Compl. ¶ 22.

Defendants filed a notice of removal and asserted that, based on the above paragraph, the amount in controversy in this action exceeds $5 million. In so arguing, Defendants wrote the following:

> Plaintiff's Complaint provides an example of how the January 2018 compensation plan may be applied. (Compl. ¶ 22.) According to Plaintiff's estimate, a sales representative who sells a single 12-month contract would be eligible to receive payments of $400 per month (*id.*), i.e., $4,800 per year. Plaintiff further alleges that sales representatives are encouraged to sell long-term, multi-year contracts. (*Id.*, ¶ 23.) Accepting Plaintiff's estimates as true, a single sales representative who closes five such contracts would have potential damages of $24,000 per year, even before exemplary damages or statutory penalties are taken into account.

Notice of Removal, at ¶ 14. Defendants also challenged Plaintiff's assertion that "hundreds if not thousands" of representatives had been affected, attaching an affidavit from Defendants' manager of human resources, who reviewed CareerBuilder's personnel records and identified 218 employees who appeared to satisfy the terms of the proposed class. Decl. of Andrew Katz. The affidavit was silent as to the amount of sales that were typical by a representative during the period, and no further evidence has been submitted by Defendants as to that point.

2

## Standard of Review

"A defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." Disher v. Citigroup Global Markets Inc., 419 F.3d 649, 653 (7th Cir. 2005) vacated on other grounds, 548 U.S. 901 (2006) (citing 28 U.S.C. § 1441(a) and Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Here, Defendants removed this case under CAFA, which gives federal courts original jurisdiction over class actions where, *inter alia*, "the aggregate amount in controversy exceeds $5,000,000"; "any member of the plaintiff class is a citizen of a state different from any defendant ('minimal diversity')"; and "the number of members of the plaintiff class is 100 or more." Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 679 (7th Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)).

The removing party bears the burden of establishing that federal subject matter jurisdiction exists and that removal was proper. Boyd v. Phoenix Funding Corp., 366 F.3d 524, 529 (7th Cir. 2004); Roppo v. Travelers Commercial Ins. Co., 869 F.3d 568, 578 (7th Cir. 2017) ("As in removal in non-CAFA diversity actions, the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied."). "If at any time . . . it appears that the district court lacks subject matter jurisdiction," or if there is a defect in removal, then "the case shall be remanded." 28 U.S.C. 1447(c); Smith v. Wis. Dep't of Agric., Trade & Consumer Prot., 23 F.3d 1134, 1142 (7th Cir. 1994).

To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Sabrina Roppo v. Travelers Commercial Ins. Co., 869 F.3d 568, 578 (7th Cir. 2017) ("Roppo"). As Roppo instructs, where the defendant's amount-in-controversy as pleaded in the notice of removal is not challenged, a court "generally accept[s] the plaintiff's good-faith allegations" about that amount. Id.

However, where the amount in controversy is challenged, removal is only proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. Id. (citing 28 U.S.C. § 1446(c)(2)(B)).

Because of the difficulty presented where a plaintiff has purposely not pleaded concrete damages, "[a] removing party therefore only must establish the amount in controversy by a good faith estimate that is "plausible and adequately supported by the evidence." Id. (citation omitted). If the removing party is able to meet this burden, then remand is appropriate only if the plaintiff can establish the claim is for less than the requisite amount to a "legal certainty." Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541 (7th Cir. 2006).

A defendant may meet this burden—that the good faith estimate is plausible and adequately supported by the evidence—through various means, including "by calculation from the complaint's allegations . . . ; by reference to the plaintiff's informal estimates or settlement demands . . .; or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands[.]" Roppo, 869 F.3d at 579.

## Analysis

The question pending before the Court is whether Defendants have shown, by a preponderance of the evidence, that they have provided a good faith estimate that is plausible and supported by the evidence (or inferable Plaintiff's allegations, as discussed above). Defendants have not met this burden and so the Court remands this case.

3

Specifically, as outlined above, Defendants have based their amount-in-controversy allegations on Paragraph 22 of Plaintiff's complaint. That paragraph does not assert that sales representatives typically sell any defined amount of commission-bearing product. Rather, it is an illustrative paragraph explaining what is meant when Plaintiff uses the term "4% commission."

Defendant's reliance on this hypothetical as the basis for its amount-in-controversy estimate is misplaced in itself, but Defendants actually go one step further and assert, without any basis, that the sales representatives in that hypothetical would actually likely each sell five $120,000 policies each. It is unclear where this number comes from, but the Court notes that the assumption of five $120,000 for each of the 218 identified agents puts the amount in controversy just over $5 million.

The information contained in Paragraph 22 of the complaint is not the sort of informal estimate or settlement demand that courts have previously relied on. E.g., Rising-Moore v. Red Roof Inns, Inc., 435 F.3d 813, 816 (7th Cir. 2006). Rather, it explicitly and by its terms was explanatory background about how commissions would be calculated on a round number like $120,000.

Defendants' bare assertion that representatives should be assumed to have sold five of such policies during the relevant period is not supported by any other aspect of the complaint or in the evidence that Defendants have submitted—either with the notice of removal or in the response to the motion for remand. This reliance on the explanatory paragraph, uncoupled with any additional evidence or concrete allegations in the complaint, is insufficient to show by a preponderance of the evidence that the amount in controversy is met.

Moreover, this lack of support is unacceptable and magnified by the fact that Defendants are presumably in possession of the information that would establish that the amount in controversy is met. Specifically, Defendants are in a position to submit an additional affidavit stating the typical number of commission-producing products were sold, or, although likely unnecessary, the specific amount, given Plaintiff's parameters, that is allegedly in controversy. And in doing so, Plaintiff would not be conceding its case, as was the concern in Spivey v. Vertrue, Inc., 528 F.3d 982, 985 (7th Cir. 2008).

Thus, the Court cannot say that Defendants have shown by a preponderance of the evidence that the amount in controversy in this case exceeds $5 million. The case is thus remanded to the Circuit Court of Cook County.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 21, 2020